PERSONALLY SERVED

FILED
MINNEAPOLIS, MINN
13 AUG 13   PM 2:59
CITY CLERK
DEPARTMENT

| | |
|---|---|
| **STATE OF MINNESOTA** | **IN DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

**Court File No:**
**Case Type:  Personal Injury**

**Judge:**

---

Jessica Porter, f/k/a Joshua
Nordyke,

       Plaintiff,

    v.

Officer Roosevelt Walls,
Individually and in his
capacity as a Minneapolis
Police Officer, City of
Minneapolis, and K mart
Corporation,

       Defendant.

**SUMMONS**

---

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

THIS SUMMONS IS DIRECTED TO THE CITY OF MINNEAPOLIS.

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you.  The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away.  They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20** DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this summons located at:

    Hazelton Law Firm, PLLC

    677 Anne Street, Suite B

    Bemidji, MN 56601



**EXHIBIT**

**A**

**3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20** days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: August 12, 2013.

HAZELTON LAW FIRM, PLLC
ATTORNEYS FOR PLAINTIFF


By:  Gary M. Hazelton  #165414
     P.O. Box 1248
     Bemidji, MN 56619-1248
     (218) 444-4529

STATE OF MINNESOTA                          IN DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

                                           Court File No:
Judge:                                     Case Type:  Personal Injury

---

Jessica Porter, f/k/a Joshua
Nordyke,

              Plaintiff,              COMPLAINT

     v.

Officer Roosevelt Walls,
individually and in his
capacity as a Minneapolis
Police Officer, City of
Minneapolis, and K mart
Corporation,

              Defendants.

---

Plaintiff, for her claim for relief, states and alleges that:

**Parties and Jurisdiction**

1.      Plaintiff Jessica Porter is a natural person residing in the State of

Minnesota.  Plaintiff Porter is a citizen of the United States of America and the State of

Minnesota.  Plaintiff Porter is a transgender individual and has officially changed her sex

and name.  Plaintiff Porter was previously named Joshua Nordyke.

2.      Defendant Officer Roosevelt Walls is a natural person, and upon

information and belief, is a resident of the State of Minnesota.   At all times herein,

Defendant Walls was employed as and was acting in his capacity as a member of the

1

Minneapolis Police Department as a sworn Police Officer.  Defendant Walls is sued in both his individual capacity and his official capacity.  This Court has jurisdiction over Defendant Walls as a resident of the State of Minnesota, or, in the alternative, pursuant to Minn. Stat. § 543.19, subd. 1.

3.     Defendant City of Minneapolis is a municipal entity, organized and existing under the laws of the State of Minnesota. Defendant City of Minneapolis acted through its agent and employee Defendant Walls during the actions described below.

4.     Defendant K mart Corporation (Kmart) is a foreign corporation doing business in the State of Minnesota.  Defendant Kmart is in the business of operating retail department stores throughout the United States, with numerous Kmart stores operating in Minnesota.  At all times herein, Defendant Kmart operated a Kmart store at 10 Lake Street West, Minneapolis, Minnesota, 55408, where it employed Defendant Walls part time as a security guard and where the incident described below occurred. The causes of action herein arose out of Defendant Kmart's course of business in the State of Minnesota.  This Court has jurisdiction over Defendant Kmart pursuant to Minn. Stat. § 543.19, subd. 1.

### General Allegations

5.     On February 2, 2012, at approximately 10:50 p.m., Plaintiff Jessica Porter and her friend, Emily Frisble (a/k/a Brandon Frisble), were customers at the Kmart store located at 10 Lake Street West, Minneapolis, Minnesota.

2

6.      On February 2, 2012, at approximately 10:50 p.m., Defendant Roosevelt Walls an employee of Kmart and was at work as a security guard for the Lake Street Kmart store.

7.      At the described place and time, Defendant Walls was employed with Kmart pursuant to the Minneapolis Police Department's Off-Duty Employment Policy. A copy of said policy is attached at Exhibit 1 and is incorporated herein by reference.

8.      At the described place and time, Defendant Walls was wearing his official Minneapolis Police Department uniform.

9.      At the described place and time, Emily Frisbie was accompanied by her dog. This dog was a "service animal" as defined by the Americans with Disabilities Act, 28 C.F.R. § 36.104. The use of a service animal was recommended by Ms. Frisbie's physician.

10.     At the described place and time, Ms. Frisbie had the dog on a leash and under control.

11.     At the described time, Kmart had a store policy that was consistent with the Americans with Disabilities Act regulations regarding service animals at 28 C.F.R. § 36.302(c). While Kmart employees were allowed to ask whether an animal was a service animal or a pet, they were not allowed to ask the customer the nature of their disability or require the customer to produce an ID card, certification papers, licensing, a special harness, tag, or vest.

3

12.    At the described place and time, Ms. Frisbie and Plaintiff Porter entered the Kmart store with the described service animal. Shortly afterwards, they were detained by Defendant Walls.

13.    At the described place and time, Defendant Walls noticed and was aware that Plaintiff Porter and Emily Frisbie were transgendered individuals.

14.    At the described place and time, Defendant Walls told Plaintiff Porter and Ms. Frisbie that they could not bring the dog into the store. Ms. Frisbie explained that the dog was a service animal. Defendant Walls demanded paperwork proving that the dog was a service animal. Defendant Walls said this was the store's policy. Defendant Walls then told Ms. Frisbie and Plaintiff Porter they had to leave the store because they did not have any service animal identification with them.

15.    At the described place and time, Defendant Walls made Ms. Frisbie and Plaintiff Porter leave the Kmart store. Defendant Walls grabbed Ms. Frisbie by the arm and drug her to the door.

16.    At the described place and time, Plaintiff Porter walked up behind Defendant Walls and tapped him on the back. Defendant Walls swung around and punched Plaintiff Porter in the face.

17.    Plaintiff Porter fell to the ground. Defendant Walls continued to punch, knee, and kick Plaintiff Porter multiple times while she was lying on the ground. Defendant Walls told Plaintiff Porter that she was under arrest and handcuffed Plaintiff Porter.

4

18.   Plaintiff Porter and Ms. Frisbie were both placed in the back of Minneapolis Police Department squad cars.  Plaintiff Porter was taken to the police station and was charged with assaulting a police office.

19.   The charges against Plaintiff Porter were later dropped for insufficient evidence.

### Count I – False Imprisonment

20.   Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

21.   According to Minnesota law, Federal law, and Kmart's store policy, Plaintiff Porter had a right to enter the Kmart store, which was a place of public accommodation.

22.   Defendant Walls intentionally restricted the liberty of Plaintiff Porter by words or acts.

23.   Plaintiff Porter was aware of Defendant Walls words or acts and/or was harmed by them.

24.   As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

5

## Count II – False Arrest under 42 U.S.C. § 1983

25.     Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

26.     According to Minnesota law, Federal law, and Kmart's store policy, Plaintiff Porter had a right to enter the Kmart store, which was a place of public accommodation.

27.     Defendant Walls' actions were taken under color of law with regard to Plaintiff Porter and constitute state action under "color of law" as defined by 42 U.S.C. § 1983.

28.     As a result of Defendant Walls' actions, Plaintiff Porter was deprived of her Fourth and Fourteenth Amendment right to be secure in her person against unreasonable seizures and was subjected to a false arrest, made without a warrant, probable cause, or reasonable suspicion in violation of the United States and Minnesota Constitutions.

29.     As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

## Count III – Assault

30.     Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

6

31.     Defendant Walls possessed the present ability and intent to harm Plaintiff Porter.

32.     Plaintiff Porter was put in fear of offensive contact and/or harm from Defendant Walls actions.

33.     As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

### Count IV – Battery

34.     Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

35.     Defendant Walls intentionally caused harmful and/or offensive contact to Plaintiff Porter's person.

36.     As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

7

### Count V – Civil Damages Claim under Minn. Stat. § 611A.79

37.    Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

38.    Defendant Walls actions were motivated by Plaintiff Porter's and Emily Frisbie's perceived sexual orientations and/or disabilities as defined in Minnesota Statute section 363A.03.

39.    Defendant Walls' assault and battery of Plaintiff Porter constitute the crime of assault motivated by bias under Minn. Stat. § 609.2231, subd. 4.  In addition or in the alternative, Defendant Walls' assault and battery of Plaintiff Porter constitute the crime of assault under Minn. Stat. §§ 609.221, 609.223, and/or 609.224.

40.    In addition or in the alternative, Defendant Walls' false arrest of Plaintiff Porter constitute the crime of false imprisonment under Minn. Stat. § 609.255.

41.    Plaintiff Porter was damaged by a bias offense and is entitled to recover damages under Minn. Stat. § 611A.79.

42.    As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

### Count VI – Excessive Force under 42 U.S.C. § 1983

43.    Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

8

44.     Defendant Walls' actions were taken under color of law with regard to Plaintiff Porter and constitute state action under "color of law" as defined by 42 U.S.C. § 1983.

45.     Defendant Walls used excessive force while falsely arresting Plaintiff Porter.

46.     As a result of Defendant Walls' actions, Plaintiff Porter was deprived of her Fourth and Fourteenth Amendment right to be secure in her person against unreasonable seizures in violation of the United States and Minnesota Constitutions.

47.     As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

**Count VII – Direct and Vicarious Liability of City of Minneapolis**

48.     Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

49.     At all times herein, Defendant Walls was acting within the scope and course of his official capacity as a Minneapolis Police Officer.

50.     The City of Minneapolis is directly liable for Defendant Walls' 42 U.S.C. § 1983 violations.

9

51.   In addition, at all times herein, Defendant Walls was acting with the scope and course of his employment as a Minneapolis Police Officer.

52.   The City of Minneapolis is vicariously liable for Defendant Walls' actions under the doctrine of *respondeat superior*.

53.   As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

### Count VIII – Vicarious Liability of K mart Corporation

54.   Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

55.   At all times herein, Defendant Walls was acting with the scope and course of his employment with K mart Corporation.

56.   K mart Corporation is vicariously liable for Defendant Walls' actions under the doctrine of *respondeat superior*.

57.   As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to

10

endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

### Count IX – Negligent Supervision of K mart Corporation

58.   Plaintiff hereby re-alleges paragraphs 1-19 as if set forth herein.

59.   Defendant Kmart gave improper orders to Defendant Walls regarding treatment of individuals with disabilities, including proper procedures for admission of service animals to a place of public accommodation.

60.   Defendant Kmart also failed to properly supervise Defendant Walls' actions during this incident.

61.   Defendant Walls' actions posed a threat of physical injury to others.

62.   Defendant Kmart was negligent in supervising Defendant Walls.

63.   As a result of this incident, Plaintiff sustained injuries to her face and torso, and consequently was severely and permanently injured; as a result, Plaintiff has in the past and will in the future incur medical expenses for the treatment of her injuries; as a result, Plaintiff has in the past and will in the future incur a loss of income and earning capacity; further, as a result Plaintiff has in the past and will in the future be forced to endure great pain and suffering; as a result, Plaintiff has been damaged and injured in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars.

### Prayer for Relief

WHEREFORE, Plaintiff prays judgment against Defendants as follows: (1) an award of compensatory damages in an amount greater than Fifty Thousand and no/100 ($50,000.00) Dollars; (2) all damages recoverable under 42 U.S.C. § 1983, including

11

punitive damages; (3) an award of costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; (4) costs and disbursements incurred herein allowed by Minnesota law; and (5) any such other relief that the Court deems just and equitable.

Dated: August 12, 2013.

HAZELTON LAW FIRM, PLLC
ATTORNEYS FOR PLAINTIFF

By: Gary M. Hazelton #165414
P.O. Box 1248
Bemidji, MN 56619-1248
(218) 444-4529

ACKNOWLEDGMENT

Plaintiff(s), through counsel, acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation pursuant to Minn. Stat. 549.211, Subd. 2, if the Court should find that the undersigned acted in bad faith, asserted a frivolous claim or defense which was costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated: August 12, 2013.

HAZELTON LAW FIRM, PLLC
ATTORNEYS FOR PLAINTIFF

By: Gary M. Hazelton #165414
P.O. Box 1248
Bemidji, MN 56619-1248
(218) 444-4529

12

3-800 Off-Duty Employment - City of Minneapolis







**TO PROTECT WITH COURAGE**

**TO SERVE WITH COMPASSION**

Police Department          +

Police Chief & Precincts          +

About the MPD          +

Crime Alerts          +

Crime Prevention Tips & Resources          +

Crime Statistics & Reports          +

Get Involved          +

Policy & Procedure Manual          −

   Preface

   1-100 Written Directives System

   1-200 Definitions Used in The Manual

   1-300 General Administration

   1-400 Rank Structure and Supervision

   1-500 Department Organization and Functions

   2-100 Internal Affairs Process

   2-200 Performance Evaluations

   2-300 Employee and Citizen Awards

   2-400 Department Programs

   2-500 Recruitment and Training

   3-100 Personal Appearance and Uniforms

   3-200 Personal Equipment

   3-300 General Work Rules

   [...] and Payroll

   [...]th and

Home > Police Department > Policy & Procedure Manual

# 3-800 OFF-DUTY EMPLOYMENT (05/09/00) (07/25/01) (03/07/03) (06/10/03) (04/23/04) (02/10/06) (5/16/12)

(A-D)

### I. Purpose

To provide employees with information related to policy rules and regulations for off-duty employment.

### II. Policy

Minneapolis Police Department employees who work off-duty are subject to the rules, regulations, ordinances, and the policies and procedures of the City of Minneapolis and Minneapolis Police Department.

In all cases of off-duty employment the primary duty, obligation, and responsibility of an employee is to the City of Minneapolis and the MPD. This policy applies to all off-duty employment.

The term "officer" is used generically in this document and does not assume a level of rank, such as Patrol Officer. For the purpose of this policy, the term "officer" applies to a sworn employee working in a capacity relating to their status as a law enforcement officer.

The term "employee" refers to all employees whether sworn or civilian, working off-duty in a civilian capacity.

Nothing in this policy provides a guarantee of off-duty employment to any employee.

All off-duty approvals expire on December 31st of each calendar year. Approval requests must be submitted annually.

### III. Rules/Regulations/Procedures

  A. **General Policies**

    1. All MPD employees who pursue off-duty employment must apply for and receive approval, before the off-duty employment commences. Unpaid/volunteer positions do not require completion of the Off Duty/Employer Site Approval Request Form.

    2. If more than one officer is working at an off-duty job site, the senior officer present at the job site is responsible for compliance with City

**EXHIBIT**

1

3-800 Off-Duty Employment - City of Minneapolis

3-600 Work Benefits - General

3-700 Over Time and Court

>> 3-800 Off-Duty Employment

3-900 Special Administrative
Details

3-1000 Drug and Alcohol Testing

4-100 Roll Call and Inspections

4-200 Equipment and Supplies

4-300 Travel and Expenses

4-400 - Vehicles

4-500 Reports and Records -
Access and Confidentiality

4-600 Specific Report Policies and
Procedures

5-100 Code of Conduct

5-200 Responsibility of Police
Officers

5-300 Use of Force

5-400 Firearms Requirements and
Policies

5-500 Specialty Unit Procedures

6-100 Mutual Aid and Other
Agency Relationships

6-200 Relations with the Media

6-300 Community-Oriented Policing
and Community Relations

6-400 Ride-Along Program

7-100 Communications

7-200 Watch Commanders

7-300 Specific Call Procedures

7-400 Vehicle Operation

7-500 Traffic Accident Investigation

7-600 Traffic Law Enforcement

7-700 Vehicle Impounding and
Towing

7-800 Tactical Response

7-900 Emergency Response
Procedures

7-1000 Persons with Disabilities
and Non-English Speaking Persons

7-2000 Exposure to Bloodborne
and Airborne Pathogens

8-100 Specific Call Procedures -
Juveniles

and MPD rules and regulations by all officers working off duty at that job site.

3. If a complaint is received about the conduct of an officer working an off-duty job, the supervisor who received the complaint will follow MPD policy and procedure in investigating the complaint. On-duty supervisors may do periodic inspections of officers working at off-duty employment sites.

4. Employees shall adhere to all local, state and federal tax laws and revenue agency income reporting requirements.

5. The official blue police uniform, worn in conformity with MPD rules and regulations, is authorized for use in off duty employment within the City limits if the officer is able to work in uniform for the MPD.

6. Use of the official blue uniform in off duty employment outside the city limits must be pre-approved by the Chief or the Assistant Chief.

7. Officers needing to wear plain clothes for off-duty employment shall obtain permission from the employee's precinct or division commander. A notation shall be made in the comments section on the officer's off-duty application that states the reason for the officer to be dressed in plain clothes.

8. The following circumstances may be grounds for suspending, denying or revoking permission to work off duty:

    a. Performance of outside employment while on duty;

    b. The off-duty work interferes or conflicts with MPD duties or availability for emergency duty;

    c. When an employee's ability to perform his/her duties for the MPD is impaired due to his/her off duty employment;

    d. Failure to adhere to the call sign/radio usage policy;

    e. Failure to file an off-duty employment application; and/or

    f. As part of disciplinary action where off-duty employment is related to the finding.

9. Off duty officers working at an approved off-duty employment site shall immediately send written notice to the Chief or Assistant Chief if a labor dispute should occur.

    a. The written notice shall contain the location at which the officer is working and the duties required of that officer. Each case will be reviewed by Police Administration for conflicts of interest.

    b. Off-duty employment approval may be suspended for the duration of the labor dispute.

10. Officers may generally be allowed to only use marked squads for off-duty employment. Unmarked squads will not be used for off-duty employment without permission from the precinct commander.

    a. Permission to use a marked squad for off-duty employment shall be obtained from an on-duty supervisor in the precinct/command from where the marked squad is taken.

    b. All units/divisions permitting use of marked squads shall maintain a sign-out log. The sign-out log will include the

3-800 Off-Duty Employment - City of Minneapolis

8-200 Juvenile Arrest Policies

8-300 Juvenile Offenses Charged By Citation

9-100 Adult Arrests

9-200 Search and Seizure

9-300 Warrants

10-100 Crime Scene Reporting

10-200 Investigative Procedures

10-300 Investigative Case Management

10-400 Property and Evidence

Prostitution Solicitation Convictions +

Records & Reports                    +

Recruiting (Jobs)                    +

Report a Crime                       +

officer's name, badge number, hours of off-duty employment and the site name and location of the off-duty work site.

   c. The use of a marked squad for off-duty employment outside of the City limits must be approved by the Chief or the Assistant Chief.

11. Officers with marked squads at off-duty work sites shall:

   a. Notify MECC of their work-site location and receive a "call sign" number if one has not already been permanently assigned to that work site;

   b. Be in full uniform while in possession of a squad;

   c. Transport all property, prisoners or other individuals for law-enforcement purposes;

   d. Ensure that all squad usage is law-enforcement related;

   e. Park the squad in a legal and visible location; and

   f. Comply with MPD Policy & Procedure Section 4-402 Vehicle Idling.

12. Officers working off-duty employment shall contact the on-duty supervisory staff of the precinct where they are performing their off-duty employment for probable cause authorization.

13. Officers working off-duty employment within the City of Minneapolis will handle police calls that are brought to their attention while working off duty, as they would if they were working on duty.

14. All reports shall be completed during the off-duty employment in which the incident occurred, and submitted for supervisory review and signature in the precinct where the off-duty site is located.

15. Compensation for arrests or work occurring during or resulting from the off-duty shift, including all travel time, shall be paid for by the off-duty employer if the arrest or work involve only the off-duty employees.

16. Officers working off-duty shall not intentionally seek assistance from on-duty MPD staff when not needed or take unnecessary action in an attempt to create a claim for compensation payable by the MPD.

17. The following provisions apply when an employee working off-duty is directed by MPD to act or otherwise becomes engaged in activities unique to law enforcement thereby qualifying for compensation from MPD:

   a. Compensation shall be paid on an hour for hour basis at the rate specified in the Labor Agreement. However, the call-back minimum provisions of the Labor Agreement shall not apply.

   b. Officers shall note in the comments section of the overtime entry in Workforce Director, the name of the off-duty site/employer and the shift hours that the officer was scheduled to work for the off-duty employer. Overtime entries not containing this information shall be rejected by the officer's Supervisor.

   c. The officer shall take appropriate action so that he/she is not compensated by the off-duty employer for the same hours for

3-800 Off-Duty Employment - City of Minneapolis

which he/she is compensated by MPD.

18. The provisions of paragraph 17, above, also apply to arrests and paperwork that result from an arrest made by an officer when not on duty or while working an off-duty job. Officers shall note in the comments section of the off-duty entry in Workforce Director, the case control number from the arrest and the type of arrest (misdemeanor/felony). Overtime entries not containing this information shall be rejected by the officer's Supervisor.

19. Portable radios shall not be used for off-duty employment outside the City of Minneapolis without the prior permission of the Chief or Assistant Chief.

20. Officers working off-duty within the City of Minneapolis shall contact Channel 7 and provide their name, badge number, hours of off-duty employment, location of the off-duty work site and obtain off-duty call sign. Channel 7 maintains list of call signs for specific off-duty locations and those assigned call signs shall be used.

21. If the off-duty employment is at a location that does not have a permanent call sign, Channel 7 will assign a temporary call sign for that location.

22. All officers shall contact Channel 7 at the end of their off-duty shift to log off.

23. An officer working off-duty shall preface radio transmissions with "OFF-DUTY" followed by the call sign.

## B. Application & Approval Process

1. To apply for off duty employment approval employees must submit an electronic application through the Workforce Director system for each job site, including off-duty employment that is not scheduled at the precinct, but is paid on the employee's City paycheck (i.e. Detox Van, Park Board, or other City departments, etc.). Incomplete applications will not be approved.

2. Off-duty employment applications shall be submitted at least 72 hours in advance to allow for review and approval by the employee's supervisor before the off-duty employment commences.

   a. Applications received less than 72 hours in advance of off-duty employment may be approved verbally or via email by the employee's precinct/division commander.

   b. The employee shall enter the request into Workforce Director during their next regularly scheduled shift for MPD, noting in the comments section the date and from whom they received approval to work the off-duty job.

3. The applicant's immediate supervisor shall review each application and make recommendations for approval or denial based on criteria in this policy. The applicant's precinct commander, or in the case of civilian employees, the employee's supervisor, shall make the final determination of eligibility for off-duty employment, with the following exceptions:

   a. Any employee applying to work for another law enforcement agency; or

   b. An officer applying to work outside the City of Minneapolis.

3-800 Off-Duty Employment - City of Minneapolis

4. The Chief or the Chief's designee shall approve applications for an employee to work off-duty for other law enforcement agencies and for an officer to work off-duty outside the City of Minneapolis, prior to such off-duty employment commencing.

   a. An employee shall not be approved to work for another law enforcement agency unless such agency has entered into a standard defense and indemnification agreement ("agreement") with the City of Minneapolis.

   b. Agreements must be signed by the employee, the MPD and the other agency and submitted to Research & Policy Development.

   c. Requests to deviate from the standard defense and indemnification agreement language should be forwarded to Research & Policy Development for review and approval by the City Attorney's Office.

   d. Employees are not authorized to enter into any other agreements that obligate the City of Minneapolis.

5. If an application is denied, the applicant has the right to appeal the decision through their chain of command.

C. **Employer / Site Approval Requests**

1. Employees are prohibited from entering any new employer/sites in Workforce Director.

2. Establishment of new employer/sites on the master list of approved employer/sites in Workforce Director will be done by authorized Research & Policy Development personnel.

3. Employees shall complete MPD form #MP-9067 (Request for off-duty employer/site approval) and submit to Research & Policy Development for approval and entry into Workforce Director. Incomplete forms will not be processed.

4. An MPD contact person must be designated for each off-duty employer/site employing officers within the City of Minneapolis. Only persons employed by the MPD in a sworn position may serve as an MPD contact person. Exceptions to the MPD contact requirement will be handled on a case by case basis.

5. The responsibilities of the MPD contact person include but are not limited to:

   a. Scheduling officers who have received approval to work at the off-duty site.

   b. Maintaining a list of employees approved to work at the site.

   c. Serve as a liaison between the MPD and off-duty employer/site.

   d. If serving as the Contact Person for an off-duty job that is related to a large-scale event for which the MPD may prepare an Incident Action Plan (IAP), the Contact Person shall communicate with the Precinct Commander of the precinct where the event will take place at least 72 hours prior to the event. Time spent communicating with the Precinct

Commander and coordinating planning shall be compensated by the off-duty employer unless prior approval is given by the MPD for payment by the MPD.

e. There will be no brokering of officers. For example, no officer may gain remuneration by the work of another officer. However, the MPD contact person responsible for scheduling officers to work may receive additional pay from the off-duty employer for that service at the employer's discretion, as long as it is not paid from a portion or percentage of another officers' wages. An officer's contract/agreement to work an off-duty job must be directly with the off-duty employer and not with another officer.

## D. Restrictions and Prohibitions

1. Officers are subject to supervision by the precinct in which they are working and are subject to inspection.

2. Officers working off-duty in uniform, or in a capacity so as to be readily identified as a Minneapolis police officer, shall not consume alcoholic beverages while so employed.

3. All employees are prohibited from working off-duty under the following conditions:

   a. For any business that is not compatible with police work; (i.e., bartending, rave gatherings, repossession work; any establishment that provides adult entertainment in the form of nude, semi-nude or topless exhibitions).

   b. If the employment requires the officer to wear a uniform and the employee is not authorized to work in uniform for the MPD.

   c. If the employment requires the officer to carry a firearm and the officer: is not authorized to carry a firearm; is on non-enforcement duty assignment; is on suspension or administrative leave; has failed to successfully complete required training or qualification with department-authorized firearms.

   d. While on limited duty (unless the Chief or Assistant Chief grants permission).

   e. While on a leave of absence, unless allowed under the Labor Agreement.

   f. While on sick leave or IOD status.

   g. For an employer who wishes to have an off-duty officer assist in a labor dispute or strike.

   h. Where the nature of the off-duty engagement constitutes a conflict of interest with the employee's duties for the MPD.

   i. Employment as a private investigator without a private investigator license.

4. Within the City of Minneapolis, officers are allowed to work at establishments, events or other premises where alcoholic beverages of any kind are served subject to the following conditions:

   a. A minimum of two off-duty officers shall be working unless the

3-800 Off-Duty Employment - City of Minneapolis

    precinct commander has determined a different minimum for a specific establishment.

    b. The job site of off-duty officers is limited to the exterior of the establishment.

    c. Off-duty officers shall not work in the capacity as a bouncer or screen patrons for admission or exclusion from the establishment.

    d. Off-duty officers shall not enter the establishment except to respond to an emergency situation or to use the rest room.

5. If an employee exceeds 64 hours of work (on and off-duty combined) in a 7-day period, the employee shall notify their Precinct/Division Commander. The 7-day period is defined as beginning on Sunday at 0000 hours and ending on Saturday at 2400 hours.

6. Probationary employees are prohibited from off-duty employment, including buyback.

7. An employee shall not submit time documents to the City or an off-duty employer that will result in being paid by more than one employer for the same time period.

8. Employees shall report all off-duty income to all local, state and federal tax or revenue agencies and shall pay the applicable taxes on all off-duty income. Payment for off-duty work shall be made in an appropriate and private manner to avoid any perception of impropriety.

Last updated May. 20, 2013